IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENELOPE P. HARRIS, ET AL. | : | CIVIL ACTION |
| v. | : | |
| RANDY MERCHANT, ET AL. | : | NO. 09-1662 |

**MEMORANDUM**

**Padova, J.**                                                                                          September 23, 2010

Plaintiffs, Penelope Harris, Morris Cheston and Regina Thomas, the trustees of the Marital Trust under Article Third, Paragraph A of the Will of Henry F. Harris ("the Trust"), bring this action against Defendants, seeking payment under a builder's risk insurance policy for damage to a home owned by the Trust. Presently before the Court is the Motion for Summary Judgment brought by Defendants Regional Excess Underwriters, LLC, a/k/a Acadia Excess Underwriters, a/k/a Berkley Excess Underwriters ("Regional") and Certain Underwriters at Lloyd's Subscribing to Policy No. B0750RNAFG0701840 ("Lloyd's"). For the following reasons, the Motion is granted..

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

In October 2006, Henry Harris asked Defendants Randy Merchant and Northeast Harbor Insurers, Inc. d/b/a Merchant Needham & Associates (collectively the "Merchant Defendants"), to obtain and maintain builder's risk insurance for a new home being built in Northeast Harbor, Maine, known as "Tides." (Moving Defs. Statement of Material Facts ¶ 2.)[1] The Merchant Defendants obtained a builder's risk policy for Tides from Hanover Insurance Company that was effective until October 15, 2007 (the "Hanover Policy"). (Id. ¶ 4.) Henry Harris died on December 22, 2006. (Id. ¶ 5.) Under the terms of Harris's will, ownership of Tides transferred to the Trust. (Id. ¶ 6.)

---

[1] We have relied only on those statements of material facts that are undisputed by Plaintiffs.

The Merchant Defendants obtained a one month extension on the Hanover Policy until November 14, 2007. (Id. ¶ 7.) The Merchant Defendants then obtained a new builder's risk policy for Tides. Regional acted as Lloyd's representative in connection with the issuance of the replacement builder's risk policy, which was issued by Lloyd's as Policy No. B0750RNAFG0701840 (the "Lloyd's Policy"). (Id. ¶ 8; Lloyd's Policy at PLFS 00030.) The period of insurance for the Lloyd's Policy was "from: **14TH NOVEMBER 2007 TO 14TH MAY 2008** both days at 12.01 am Local Standard Time." (Id. at PLFS 00023.) The Lloyd's Policy contains a Termination of Coverage section that states, in pertinent part, as follows: "The property referred to in Insuring Clauses a) and b) shall be covered by this Policy for the period stated in the Schedule and for such period or periods as may be mutually agreed between Underwriters and the Assured . . . ." (Id. at PLFS 00036.)

An Insurance Binder for the Lloyd's Policy was issued on November 27, 2007. (Moving Defs. Ex. C.) The Insurance Binder states that the Policy Period was November 14, 2007 to May 14, 2008. (Id. at REG 027.) The premium paid for this insurance was $7,500.00. (Id.) The Merchant Defendants billed Penelope P. Harris for the Lloyd's Policy on December 15, 2007. (Moving Defs. Ex. D.) The invoice provides the following description: "'Tides' Builders Risk Insurance 11/14/07 to 5/14/08." (Id.) The Trustees paid the invoice on December 20, 2007. (Moving Defs. Ex. E.)

Regional sent the original and one copy of the Lloyd's Policy to the Merchant Defendants on January 31, 2008. (Moving Defs. Ex. F.) The cover letter notes that the policy period for the Lloyd's Policy was November 14, 2007 to May 14, 2008. (Id.) The Merchant Defendants sent a copy of the Lloyd's Policy to Penelope Harris, in Maine, on February 15, 2008. (Moving Defs. Ex.

2

G.) The cover letter states: "Enclosed is your builder's risk policy (TIDES) from Lloyds of London for 11/14/07-5/14/08." (Id.)

Heather Gwarjanski of Regional sent an e-mail to Randy Merchant on April 16, 2008 regarding the Lloyd's Policy. (Moving Defs Ex. H.) The e-mail states, in pertinent part, as follows:

> Working away on some upcoming renewals and noticed this 6 month policy is coming up the middle of May. Curious to see if they think an extension will be needed?
>
> If so, I'll have you let me know how long they think they'll need an[d] maybe what they have left to complete. Then I can take it to my Lloyds market to see where they will be.

(Id.) Ms. Gwarjanski sent another memorandum to Randy Merchant on May 13, 2008 regarding the Lloyd's Policy, but misstated the expiration date of the policy as May 14, 2009. (Moving Defs. Ex. I.) The memorandum states: "Please be advised that we will be closing our files on the above referenced account since we have not heard from you regarding the renewal of the above policy. Please advise the insured that we are off risk effective 5/14/2009." (Id.) The Merchant Defendants received this memorandum by United States mail in May 2008. (Emery Dep. at 20.) Tabatha Emery, who was then a customer service representative for the Merchant Defendants, read the memorandum when it came in and showed it to Randy Merchant. (Id. at 5, 20-21.) Ms. Emery discussed the memorandum with Randy Merchant and pointed out the May 14, 2009 expiration date contained in the memorandum to him. (Id. at 21-22.) Ms. Emery did not send a copy of the memorandum to the Trust or do anything else with it. (Id. at 26.)

On July 25, 2008, an explosion occurred at Tides which damaged the property. (Compl. ¶ 26.) Randy Merchant learned about the explosion from Lamont Harris, who had been staying at Tides at the time of the explosion. (Merchant Dep. at 110-112.) Lamont Harris visited Randy

3

Merchant at his office the Monday or Tuesday following the explosion to find out if there was insurance coverage. (Id. at 110-11.) Randy Merchant responded that he "did not believe there was any coverage, because the builder's risk policy had been – had lapsed, had terminated." (Id.) After Lamont Harris left his office, Randy Merchant checked the Merchant Needham files to determine if Merchant Needham had procured homeowners insurance for Tides. (Id. at 117.) He also spoke with his staff and was given a copy of the May 13, 2008 memorandum from Regional. (Id.) Randy Merchant believes that it would have been inappropriate to extend the Lloyd's Policy because Tides had been substantially completed at the time that policy expired. (Id. at 140.) He is not aware of any request to extend the term of the Lloyd's Policy or any payment made to extend that policy. (Id. at 215.)

After the explosion, Lamont Harris contacted Judithann Sheehan, a paralegal with the law firm Ballard Spahr's Family Wealth Management Group, which did work for the Trust. (Sheehan Dep. at 10-12, 67.) Lamont Harris asked her whether Tides was insured. (Id. at 67.) Ms. Sheehan checked the file and told Lamont Harris that the insurance policy had expired. (Id. at 67-68.) Morris Cheston, who is an attorney with Ballard Spahr as well as a Trustee of the Trust, contacted Ms. Sheehan shortly thereafter and asked if Tides was insured. (Id. at 69.) Ms. Sheehan notified him that the policy had expired. (Id. at 69-70.) All of the paperwork received by Ballard Spahr relating to the Lloyd's Policy came through the Merchant Defendants; Ballard Spahr did not receive any paperwork from either Regional or from Lloyd's. (Id. at 112-13.) The Complaint alleges that Plaintiffs submitted a claim to Lloyd's for the damage to Tides, but the claim was denied because the Lloyd's Policy had expired prior to the explosion. (Compl. ¶ 28.)

Plaintiffs have asserted three claims against Regional and Lloyd's. The first claim, for breach

4

of contract, is based on the premise that the Lloyd's Policy remained in effect at the time of the explosion at Tides. (Id. ¶¶ 42-45.) The second claim, for promissory estoppel, is based on the premise that Plaintiffs, through their agents the Merchant Defendants, did not renew or replace the Lloyd's Policy because they reasonably relied on the May 13, 2008 memorandum's statement that the Lloyd's Policy expired on May 14, 2009. (Id. ¶¶ 47-48.) The third claim, for negligence, is based on the premise that Regional breached its duty of care to Plaintiffs by transmitting a defective expiration notice to the Merchant Defendants. (Id. ¶¶ 51-52.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R.

Civ. P. 56(e)(2). That is, summary judgment is appropriate if the non-moving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. DISCUSSION

### A. Choice of Law

We apply Pennsylvania's choice of law rules in diversity cases. See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007). First, we must determine if an actual conflict exists between the laws of Pennsylvania and Maine, i.e., whether there is an actual difference between the applicable laws of those two states. See Hammersmith, 480 F.3d at 230. If a true conflict exists, we use the law of the state with the "most significant contacts or relationships with the insurance contract." Budtel Assocs. LP v. Cont'l Cas. Co., 915 A.2d 640, 643, 645 (Pa. Super. Ct. 2006) (citations omitted). In the absence of an actual conflict of law, the Court "may refer to the states' laws interchangeably." Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006).

### B. Breach of Contract

The Complaint alleges that, "[a]s a result of the expiration notice transmitted by defendants Lloyd's, or Regional as its authorized representative, builder's risk coverage for Tides under the Lloyd's Policy remained in effect at the time" of the explosion at Tides. (Compl. ¶ 42.) The Complaint further alleges that Lloyd's breached the terms of the Lloyd's Policy by wrongfully denying coverage of Plaintiffs' claim made with respect to the explosion at Tides. (Id. ¶ 45.) Moving Defendants argue that they are entitled to summary judgment because the Lloyd's Policy had expired prior to the explosion at Tides and Plaintiffs and Moving Defendants had not agreed to extend coverage past the expiration date stated in the Policy.

6

Moving Defendants assert that there is no conflict between the laws of Pennsylvania and Maine with respect to the existence of an enforceable contract, but, if a true conflict does exist, Maine law should be applied. Under Maine law, "[a] contract is legally enforceable if it is founded upon a meeting of the minds, consideration, and mutuality of obligations." In re Estate of McPhee, 904 A.2d 401, 402 (Me. 2006) (citing Dom J. Moreau & Son, Inc. v. Fed. Pac. Elec. Co., 378 A.2d 151, 153 (Me. 1977)). Under Pennsylvania law, "'a contract is created where there is mutual assent to the terms of a contract by the parties with the capacity to contract.'" Beaver Dam Outdoors Club v. Hazleton City Auth., 944 A.2d 97, 103 n.2 (Pa. Commw. Ct. 2008) (quoting Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999)). "In order for a contract to be formed, there must be an offer, acceptance, and an exchange of consideration." Id. (citing Jenkins v. County of Schuylkill, 658 A.2d 380 (Pa. Super. Ct. 1995)). "An enforceable agreement exists if the parties have manifested their intent to be bound by its terms and the terms are sufficiently definite." Id. (citing In re Estate of Hall, 731 A.2d 617 (Pa. Super. Ct. 1999)). We conclude that there are no relevant differences between the laws of Maine and Pennsylvania as to the creation of a legally enforceable contract and, consequently, we may apply either state's law. Huber, 469 F.3d at 74.

Moving Defendants maintain that the Lloyd's Policy expired by its own terms on May 14, 2008, at 12:01 a.m. local standard time (Lloyd's Policy at PLFS 00023) and, consequently, Tides was not covered under the Lloyd's Policy when the explosion occurred on July 25, 2008. The Lloyd's Policy provides that the coverage period could only be extended by mutual agreement between the underwriters and the insured. (Id. at PLFS 00026.) Moving Defendants assert that there is no evidence that they mutually agreed with Plaintiffs to extend coverage beyond the expiration date

stated in the policy, or that they even discussed extending the Lloyd's Policy with Plaintiffs.

Plaintiffs admit that the Lloyd's Policy was scheduled to expire on May 14, 2008, and further admit that "the Merchant Defendants did not take any affirmative action to renew coverage on their behalf." (Pls. Mem. at 3.) Plaintiffs contend, instead, that the May 14, 2008 memorandum constituted an offer by Lloyd's to extend coverage under the Lloyd's Policy that was binding on Lloyd's even if it was not expressly accepted by the Merchant Defendants. Plaintiffs rely on Lucien Bourque, Inc. v. Cronkite, 557 A.2d 193 (Me. 1989), which states that "[g]enerally speaking, 'in order for any legally binding agreement to come into existence, the parties to it must have manifested their mutual assent to all of its material terms[;]' . . . however, in certain circumstances a contract may be implied even where the offeree does not expressly agree to its terms." Id. at 196 (quoting Sevigny v. Home Builders Ass'n of Maine, Inc., 429 A.2d 197, 202 (Me. 1981), and citing Restatement (Second) of Contracts § 69(1) (1981)).

The circumstances in which a contract may be implied without express agreement are, however, limited. Under Maine law, an offeree's failure to respond to an offer operates as an acceptance only in the following cases:

> "**(a)** Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.
>
> **(b)** Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.
>
> **(c)** Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept."

Id. (quoting Restatement (Second) of Contracts § 69(1)). There is no evidence on the record before

us upon which a reasonable jury could conclude that any of these circumstances exists in this case. Indeed, the only evidence before us indicates the contrary. The Lloyd's Policy, by its own terms, could only be extend by mutual agreement between the underwriters and the insured. (Lloyd's Policy at PLFS 00026.) Moreover, Gwarjanski's April 16, 2008 memorandum to Randy Merchant asks that Regional be notified whether Plaintiffs wanted an extension of the Lloyd's Policy, and her May 13, 2008 memorandum, while it misstates the expiration date of that policy, clearly indicates that Regional was closing its files with respect to the Lloyd's Policy since it had never received notification that Plaintiffs sought to renew it. (Moving Defs. Exs. H, I.) We therefore conclude that there was no enforceable contract to extend the Lloyd's Policy and that the policy had expired prior to the explosion at Tides. We further conclude, accordingly, that Moving Defendants are entitled to judgment as a matter of law on Plaintiffs' breach of contract claim.

    C.    <u>Promissory Estoppel</u>

The Complaint alleges that Plaintiffs, through their agents the Merchant Defendants, "reasonably relied to their detriment upon the statement by defendants Lloyd's, or Regional as its authorized representative, that coverage for Tides under the Lloyd's Policy expired on May 14, 2009." (Compl. ¶ 47.) The Complaint further alleges that, as a result of their reliance on the statement that the Lloyd's Policy expired on May 14, 2009, Plaintiffs "did not take any action to renew the Lloyd's Policy, or seek other replacement builder's risk coverage for Tides prior to the explosion, all to the substantial detriment of Plaintiffs." (Id. ¶ 48.) The Complaint also alleges that Lloyd's is consequently "estopped, as a matter of law, from denying coverage to plaintiffs under the Lloyd's Policy for the losses and damages that occurred as a result of the explosion at Tides on July 25, 2008." (Id. ¶ 49.) Moving Defendants argue that they are entitled to summary judgment because

9

neither Plaintiffs nor the Merchant Defendants relied on the May 13, 2008 memorandum's misstatement of the expiration date for the Lloyd's Policy.

Moving Defendants assert that there is no conflict between the laws of Pennsylvania and Maine with respect to promissory estoppel. We agree, as both Maine and Pennsylvania have adopted the definition of promissory estoppel set out in the Restatement (Second) of Contracts:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Harvey v. Dow, 962 A.2d 322, 325 (Me. 2008) (quoting Restatement (Second) of Contracts § 90(1) (1981)); see also Thatcher's Drug Store of West Goshen, Inc. v. Consol. Supermarkets, Inc., 636 A.2d 156, 160 (Pa. 1994) (same). "A party asserting a claim of estoppel has the burden of establishing all the essential elements." Thatcher's Drug Store, 636 A.3d at 160 (citing Funds for Business Growth, Inc. v. Maraldo, 278 A.2d 922, 926 (Pa. 1971)). As there is no conflict between the laws of Pennsylvania and Maine as to promissory estoppel, we may apply either state's law. Huber, 469 F.3d at 74.

Moving Defendants maintain that Plaintiffs cannot establish all of the essential elements of a claim of promissory estoppel in this case because neither Plaintiffs nor the Merchant Defendants relied on the expiration date for the Lloyd's Policy that was contained in the May 13, 2008 memorandum. Plaintiffs concede that they did not directly rely on the date contained in the May 13, 2008 memorandum because they did not receive a copy of this memorandum until after the explosion at Tides. (Pls. Mem. at 5.) Consequently, we must determine whether there is evidence in the record of this Motion upon which a reasonable jury could determine that the Merchant

Defendants relied upon the expiration date for the Lloyd's Policy contained in the May 13, 2008 memorandum and, as a result of such reliance, did not seek to renew or replace the builder's risk insurance for Tides.

Viewing the evidence of record in the light most favorable to Plaintiffs, we find that the Merchant Defendants received the May 13, 2008 memorandum from Regional in May 2008. (Emery Dep. at 20.) Tabatha Emery read the memorandum when it came in, discussed it with Randy Merchant, and pointed out to him that the memorandum referenced a May 14, 2009 expiration date. (Id. at 21-22.) The Merchant Defendants never sought renewal of the Lloyd's Policy. (Merchant Dep. at 215.) However, at the time of the explosion at Tides, Randy Merchant believed that the Lloyd's Policy had terminated and that there was no coverage available for the damage to Tides. (Id. at 111.) He also believed that it would not have been appropriate to seek an extension of the builder's risk insurance for Tides because the construction of that home had been substantially completed. (Id. at 140.) Furthermore, there is no evidence in the record of this Motion that Randy Merchant or anyone else associated with the Merchant Defendants whose job involved obtaining or renewing insurance policies actually relied on the expiration date contained in the May 13, 2008 memorandum in not seeking a renewal or extension of the Lloyd's Policy.[2]

We conclude that there is no evidence on the record before us upon which a reasonable jury could find that the Merchant Defendants reasonably relied on the expiration date in the May 13, 2008

---

[2] There is evidence that Tabatha Emery refrained from taking any action with respect to the Lloyd's Policy because the May 13, 2008 memorandum stated that the Policy would not expire for another year. (Emery Dep. at 23.) However, Ms. Emery did not have any responsibility with respect to the Lloyd's Policy except for opening the mail. (Id. at 47.) Moreover, regardless of when the Policy was sent to expire, Emery testified that she would simply have given the correspondence to Randy Merchant or another agent. (Id. at 23.)

memorandum from Regional in not seeking a renewal or extension of the Lloyd's Policy. We further conclude, accordingly that the Moving Defendants are entitled to judgment as a matter of law on Plaintiffs' promissory estoppel claim.

    D.      Negligence

The Complaint alleges that Lloyd's and Regional "owed plaintiffs a duty to use due and proper care in preparing and transmitting communications concerning coverage under the Policy to plaintiffs and their brokers including, without limitation, the May 13, 2008 expiration notice." (Compl. ¶ 51.) The Complaint further alleges that Lloyd's and Regional breached this duty of care by negligently and carelessly sending the May 13, 2008 memorandum to the Merchant Defendants and by failing to provide notice of the expiration of the Lloyd's Policy directly to Plaintiffs. (Id. ¶ 52.) The Complaint also alleges that the harm Plaintiffs suffered was the direct and proximate result of the negligence of Regional and Lloyd's. (Id. ¶ 54.)

Moving Defendants assert that there is no conflict between the laws of Pennsylvania and Maine with respect to negligence, but, if a true conflict does exist, Maine law should be applied. Under Pennsylvania law, "[f]or a party to prevail in a negligence action, ordinary or professional, the elements are identical: the plaintiff must establish the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009) (citing Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998)). Maine law similarly defines the elements of a cause of action for negligence as "'a duty owed, breach of that duty, and an injury to the plaintiff that is proximately caused by a breach of that duty.'" Mastriano v. Blyer, 779 A.2d 951, 954 (Me. 2001) (quoting Stanton v. Univ. of Maine Sys., 773 A.2d 1045, 1049 (Me. 2001), and

citing McPherson v. McPherson, 712 A.2d 1043, 1045 (Me. 1998), and Searles v. Trustees of St. Joseph's Coll., 695 A.2d 1206, 1209 (Me. 1997)). We conclude that there are no relevant differences between the laws of Maine and Pennsylvania as to negligence and, consequently, we may apply either state's law. Huber, 469 F.3d at 74.

Moving Defendants argue that they are entitled to summary judgment on Plaintiffs' negligence claim because Plaintiffs are unable to establish that their injury was proximately caused by the inclusion of the incorrect expiration date for the Lloyd's Policy in the May 13, 2008 memorandum. Moving Defendants contend, as they did in connection with Plaintiffs' promissory estoppel claim, that Plaintiffs did not reasonably rely on the expiration date contained in the May 13, 2008 memorandum because they were unaware of the May 13, 2008 memorandum until after the explosion at Tides. Moving Defendants further maintain that the Merchant Defendants did not rely on the May 13, 2008 memorandum to refrain from renewing, or replacing, the Lloyd's Policy.

Plaintiffs rely on the evidence submitted in support of their promissory estoppel claim to support their negligence claim and have not submitted any additional evidence to support the existence of proximate causation in connection with their negligence claim. (Pls. Mem. at 9.) We have reviewed the evidence of record to determine whether there is any evidence upon which a reasonable jury could conclude that Regional's mailing of the May 13, 2008 memorandum proximately caused Plaintiffs or the Merchant Defendants to forbear from taking action to renew or replace the Lloyd's Policy. We conclude, as we did in connection with Plaintiffs' promissory estoppel claim, that there is no such evidence on the record. We further conclude, therefore, that the Moving Defendants are entitled to judgment as a matter of law as to Plaintiffs' negligence

claim.[3]

## IV. CONCLUSION

For the foregoing reasons, we conclude that Plaintiffs have plainly failed to "set out specific facts showing a genuine issue for trial" with respect to any of their three claims against Regional and Lloyd's. Fed. R. Civ. P. 56(e)(2). Moreover, the undisputed facts of record establish that Regional and Lloyd's are entitled to judgment in their favor as a matter of law as to each of those claims. We therefore grant Moving Defendants' Motion for Summary Judgment in its entirety.

An appropriate Order follows.

BY THE COURT:

/s/John R. Padova

John R. Padova, J.

---

[3] Moving Defendants also argue that they are entitled to summary judgment on Plaintiffs' negligence claim because Plaintiffs cannot establish that they breached a duty of care owed to Plaintiffs without expert evidence under Maine law. As we have determined that Moving Defendants are entitled to the summary judgment in their favor with respect to this claim because there is no evidence on the record upon which a reasonable juror could conclude that the harm done to Plaintiffs was proximately caused by Moving Defendants' mistake in the May 13, 2008 memorandum, we need not address this argument.